IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY CORPORAL,

   Plaintiff,

v.

LT. J. SMITH,
NURSE D. SHOWALTER,
WARDEN WEBER,
COMMISSIONER HILL,
SECRETARY R. GREEN,

   Defendants.

Civil Action No.: DKC-20-1193

**MEMORANDUM OPINION**

This is a civil rights complaint filed by self-represented Plaintiff Jeffrey Corporal who is incarcerated in Western Correctional Institution ("WCI") in Cumberland, Maryland. Defendants Lt. J. Smith, Warden Weber, Commissioner Hill, and Secretary Green have filed a Motion to Dismiss or for Summary Judgment. ECF No. 19. Also pending are Plaintiff's Motions for Partial Summary Judgment (ECF Nos. 10 & 23) and for Default Judgment or for Civil Contempt (ECF No. 16). The issues are fully briefed, and the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' motion, construed as one for summary judgment, shall be denied in part and granted in part; Plaintiff's pending motions[1] shall be denied; and the complaint as to Defendant Showalter shall be dismissed without prejudice.

---

[1] Plaintiff filed two motions for partial summary judgment (ECF No. 10; ECF No. 23) and a motion for default judgment (ECF No. 16). Plaintiff's motions for partial summary judgment are addressed below. The motion for default judgment concerns Defendant Showalter's failure to respond to the complaint against her. ECF No. 16. Service of the complaint was not, however, accepted on behalf of Ms. Showalter. ECF No. 12. Pursuant to this court's obligation to screen prisoner complaints under 28 U.S.C. § 1915A, the complaint as to Ms. Showalter alleging only that she provided "inadequate medical care" without further explanation, shall be dismissed.

# I.  BACKGROUND

Plaintiff is a prisoner confined at Western Correctional Institution ("WCI") in Cumberland, Maryland. Prior to his incarceration, Plaintiff worked as a correctional officer in Baltimore City. *See Corporal v. Warden*, Civ. Action DKC-20-950 (D. Md. 2020). Because of his prior employment status, Plaintiff has frequently refused to accept assignments to a cell with a cellmate. *Id*.

## A.  Complaint Allegations

Plaintiff's unverified complaint alleges that on December 5, 2019, after an officer escorted him from the "S.O.H. unit" to housing unit four, he arrived at cell 4C-21 which was already occupied by another inmate, Joshua Littlewolf. ECF No. 1 at 3. Plaintiff explains that he had previously refused to share a cell with Mr. Littlewolf when Plaintiff was housed in cell 4C-16. *Id*. Officer Barnes, who Plaintiff alleges was escorting him, opened the cell door slot and put handcuffs on Mr. Littlewolf who remained inside the cell. *Id*. Plaintiff states that he warned the officer that he would not allow him to remove the handcuffs from Mr. Littlewolf if he was placed in the cell. *Id*. Plaintiff insisted that he be "retransferred to cell 4C-16 and remain housed there without a cell mate." *Id*.

Plaintiff explains that Lt. Smith, the housing unit manager, eventually arrived on the scene and "repeatedly ordered" Plaintiff to cease preventing the removal of Mr. Littlewolf's handcuffs. Because Plaintiff refused to comply with the orders given, Lt. Smith ordered Officer Barnes spray Plaintiff with mace through the opened cell door slot. ECF No. 1 at 4. Plaintiff used a chair inside the cell to press against the opening and "blocked much of the mace entering the cell." *Id*. Plaintiff states that some of the chemical got on his hands, but the chair was effective in blocking the chemical agent. *Id*.

Lt. Smith ordered the cell door opened at which point Lt. Smith and Officer Barnes rushed inside the cell. ECF No. 1 at 4. Plaintiff claims that he does not accurately recall all of the events that occurred after Lt. Smith and Officer Barnes came into the cell, but does remember stumbling out of the cell and falling to the floor where he was face down. *Id*. He claims that he was complying with orders to be handcuffed behind his back, but Lt. Smith punched him repeatedly on the left side of his rib cage and put the cuffs on his wrist tightly. *Id*. Plaintiff recalls being dragged to the housing unit property room which has no surveillance camera. *Id*. at 4-5.

Plaintiff recalls that, once in the property room, another inmate was removed from the holding cage and he was then pushed into the cage. ECF No. 1 at 5. Plaintiff describes being "immediately attacked savagely by Lt. Smith" who punched Plaintiff in the head, face, chest, and thighs. *Id*. Plaintiff claims that Lt. Smith grabbed his ankles and yanked him to the floor. *Id*. He claims that, as he remained on the floor, face-down, Lt. Smith repeatedly "stomped" on his upper and lower back, his handcuffed wrists, and his hands. *Id*. Plaintiff claims that Lt. Smith then exited the holding cage and then, with the help of another officer, began macing Plaintiff "continuously" for approximately fifty seconds while Plaintiff lay face-down on his chest. *Id*.

The injuries Plaintiff states he sustained during the use of force include stress and anxiety; swelling to his forehead and temples; soreness to his face, chest, legs, and back; soreness, swelling, bruising to his wrists; soreness to the left side of his rib cage; swelling and soreness in his right thumb; and a "ten-hour long, very painful, burning sensation on all the foregoing maced areas of [his] body." ECF No. 1 at 6. Plaintiff describes the medical evaluation provided after the use of force as a sham performed by "an incompetent female nurse, D. Showalter." *Id*. He claims that Ms. Showalter denied his request to clean the mace off of his face and eyelids, refused to examine the painful areas of his body, and refused to make a recommendation to a medical doctor to

prescribe Plaintiff medication for pain and emotional distress. *Id*. Plaintiff asserts that the only thing Ms. Showalter did was check his vital signs and laughed when he told her that he had been assaulted by officers. *Id*. Plaintiff states that photographs were taken of his face, but the officer taking the pictures refused to photograph his face "maceless" and refused to photograph the other areas of his body he claims were injured. *Id*. at 6-7.

After he was given a shower, Plaintiff was confined to a temporary isolation cell, 4-B-01, for six days. ECF No. 1 at 7. He claims that he was confined to that cell on the orders of Lt. Smith. *Id*. In his amended complaint[2] Plaintiff explains that Lt. Smith together with Warden Weber, Commissioner of Correction Hill, and Secretary Green operated the isolation cell in a manner that violated his constitutional rights. ECF No. 5 at 3. He explains that the light in the isolation cell remained on continuously because "no one could turn it off" and during the time he was in the cell he was denied all of his property. *Id*., *see also* ECF No. 1 at 7. He states that the only clothes he was permitted during his confinement were a pair of boxer shorts, a t-shirt, and a jumpsuit. *Id*.

Plaintiff claims that he was denied sheets and a blanket, forcing him to endure cold temperatures continuously. ECF No. 5 at 3. He states that he was also denied "slippers and shoes" which forced him to "walk painfully on the hard, cold, concrete floor." *Id*. He adds that he was

---

[2] "[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001), quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000), citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended . . . supersedes the pleading it modifies . . ."). Here, Plaintiff appears to resurrect the claims left out of the amended complaint in his motion for partial summary judgment filed prior to Defendants' dispositive motion. ECF No. 10. Defendants have also addressed the claims raised in the original complaint. ECF No. 19. Because the parties have addressed all of the issues, and in light of Plaintiff's self-represented status, the court will also address each of Plaintiff's allegations in turn.

denied: hygiene items including towels and washcloths; access to showers; access to legal documents; out of cell recreation; eating utensils; sufficient toilet paper; religious material including the Bible; and access to the incoming and outgoing mail. *Id*. at 4. Plaintiff claims that he was also not permitted access to the law library, to the chaplain, and to medical sick call forms. *Id*. He claims that he was denied access to medical care "unless [he] sustained a life-threatening condition" and was denied medical treatment for the injuries he sustained during the use of force by Lt. Smith. *Id*.

He claims that he sustained the following injuries as a result of being confined to the isolation cell: "stress and anxiety; sore feet, sore knees, and sore ankles from walking on the floor; constant sore eyes, a headache, and sleep deprivation from the cell's light being on continuously; sore and irritable gums from not flossing [his] teeth; burning and itchy feet and toes from not using . . . commissary purchased feet medicine; and constant itchy skin from not showering." ECF No. 5 at 5. Plaintiff adds that his inability to practice his Christian faith caused him "stress and anxiety." *Id*. Plaintiff also claims that the deprivation of his legal documents and denial of access to the mail resulted in his denial of access to the courts. ECF No. 5 at 5. He states that his petition for judicial review of an adverse Inmate Grievance Office ("IGO") decision dated November 12, 2019, was due by December 12, 2019 and he could not meet that deadline. *Id*. The appeal concerned IGO case number 201 914 00. *Id*.

Plaintiff also explains that he has challenged the same "inhuman conditions and denials" he experienced from December 5 to 11, 2019, in prior IGO cases, citing violations of Division of Correction policies. ECF No. 5 at 6. He states that a WCI officer confined him to a temporary isolation cell on December 31, 2009, where he remained for four days. *Id*. He states that he complained that the length of his confinement and the cruel conditions he endured in the cell such

as denial of hygiene items, violated policy WCI-ID 110-4-1.  Although the Warden dismissed Plaintiff's administrative remedy procedure complaint ("ARP"), he claims that the Commissioner agreed with him and directed correctional staff at WCI to operate temporary isolation cells in compliance with the policies cited.  *Id*.

In 2011, Plaintiff states, Administrative Law Judge Robert Berry concluded that the prison policy (WCI-ID 110-4-1) was violated when Plaintiff was denied hygiene products when he was confined for four days in a temporary isolation cell.  ECF No. 5 at 6-7.  The ALJ ordered WCI to conduct a review of the use of temporary isolation cells in housing unit 4.  *Id*. at 7.  The ALJ decision was affirmed by Secretary Gary Maynard.  Plaintiff claims, however, that when he was again confined in a temporary isolation cell in housing unit 4 on July 26, 2019, where he was kept for 10 days, he was subjected to the same "inhuman conditions" in violation of prison policies.  *Id*.

Plaintiff concludes that Warden Weber, Commissioner Hill, and Secretary Green violated his Eighth Amendment right to be free from cruel and unusual punishment when he was kept in the temporary isolation cell for six days.  ECF No. 5 at 8.  He also claims that these defendants violated his right to due process and his First Amendment right of access to the courts when he lost the opportunity to appeal the IGO's decision.  *Id*.

**B.    Defendants' Response**

In their Motion to Dismiss or for Summary Judgment, Defendants put forth the following facts based on declarations of some of the officers involved and verified records.  On December 5, 2019, Officer Earl Gaumer escorted Plaintiff to cell 4-C-21 where another inmate, Joshua Littlewolf, was housed.  ECF No. 19-4 at 1, ¶ 4 (Declaration of Earl Gaumer).  After arriving at the cell, Officer Gaumer asked Mr. Littlewolf to come to the slot and have handcuffs placed on him so that Plaintiff could enter the cell.  *Id*.  Mr. Littlewolf complied; Officer Gaumer had the

cell door opened; and Plaintiff walked into the cell. *Id.* Plaintiff's handcuffs were then removed but he refused to move from in front of the pass-through slot so that Mr. Littlewolf's restraints could be removed. *Id.* Officer Gaumer continued to give Plaintiff direct orders to move, but Plaintiff refused to comply. *Id.* After Officer Gaumer radioed for assistance, Lt. Smith, Officer Barnes, and Officer Trail arrived. *Id.*

Lt. Smith repeated orders for Plaintiff to move away from the pass-through slot and also ordered Plaintiff to put a chair he had picked up back down on the ground. ECF No. 19-4 at 2, ¶ 4; ECF No. 19-5 at 1, ¶ 4. According to the Notice of Inmate Rule Violation written by Lt. Smith, Plaintiff threatened to assault Mr. Littlewolf with the plastic chair he was holding if staff did not move away from the cell door. ECF No. 19-6 at 2, 10, 11. Plaintiff continued to refuse to obey all orders given and began to move towards Mr. Littlewolf with the chair. ECF No. 19-4 at 2, ¶ 4; ECF No. 19-5 at 1, ¶ 4. Officer Barnes deployed pepper spray in Plaintiff's direction; and the cell door was ordered open. *Id.* Lt. Smith grabbed the back of Plaintiff's shirt and took him to the ground and controlled his legs. ECF No. 19-5 at 1, ¶ 4. Officer Trail gained control of Plaintiff's arms which enabled Officer Barnes to put handcuffs on Plaintiff. *Id.*

After removing both inmates from the cell, Plaintiff was escorted to the "Adjustment Room hallway to await the arrival of Medical." ECF No. 19-6 at 2. Plaintiff was assessed and treated by D. Showalter, R.N., for pepper spray exposure. *Id.* Plaintiff was offered and accepted a shower for decontamination. *Id.*

At the adjustment hearing, Plaintiff claimed that he "never tried to threaten anyone" and maintained that "it was illegal" for Mr. Littlewolf to be in a cell with Plaintiff because he refused to allow Mr. Littlewolf to share a cell with him on a prior occasion. ECF No. 19-6 at 18. The adjustment hearing officer noted that during the "preliminary stage" Plaintiff "admitted to having

his chair in his hands." *Id*. The Hearing Officer also noted that the three staff reports consistently reported that Plaintiff verbally threatened to harm Mr. Littlewolf. *Id*. Plaintiff was found guilty of violating Rule 104 (making threats that include using physical harm to objects, property, or individuals) and Rule 316 (disobeying a direct order). *Id*. at 2; 18. As a penalty, Plaintiff received 60 days of segregation.[3] *Id*. at 19.

Defendants assert that Plaintiff's conditions of confinement claim does not state an Eighth Amendment claim as he has failed to articulate facts that constitute a pervasive risk of harm amounting to deliberate indifference to his needs. ECF No. 19-1 at 7-8.

## C.    Plaintiff's Response in Opposition

Plaintiff filed his own declaration in opposition to Defendants' motion. He admits that he disobeyed orders to allow officers to remove the restraints from Mr. Littlewolf. ECF No. 22 at 3-4. He states that he repeatedly warned Officer Barnes that he would prevent him from removing Mr. Littlewolf's restraints until Plaintiff was put into another cell (4C-16) where he could remain without a cellmate. *Id*. at 4. Plaintiff also admits that Lt. Smith gave several orders for Plaintiff to "cease preventing the removal of the handcuffs from Littlewolf" and claims Lt. Smith warned that he "would use excessive force on [Plaintiff] if [he] disobe[y]ed that order." *Id*.

According to Plaintiff, after he repeatedly disobeyed the orders given, Officer Barnes sprayed chemical agent three times at Plaintiff. ECF No. 22 at 4. Plaintiff states that he used the chair in the cell to press against the opened slot to prevent mace from entering the cell. *Id*. Plaintiff

---

[3] Plaintiff noted an appeal of the hearing officer's decision and claimed that his federal due process rights were violated because the hearing officer was not permitted to view the entire video surveillance footage that was relevant to the incident. ECF No. 19-6 at 22. He claimed that the video surveillance would establish that he had not been pepper sprayed inside the cell, that he was handcuffed outside the cell, and an officer punched him repeatedly in his left side. *Id*. He maintained the officers' reports contained perjury and sought one-million dollars in damages. *Id*.

states that, as a result of his tactic to block the spray, the chemical agent did not hit his upper body or face until the cell door was opened and Officer Barnes sprayed chemical agent twice more. *Id*. at 4-5. Plaintiff describes further uses of force against him following his removal from the cell and claims that the medical exam provided by Nurse Showalter was a sham. *Id*. at 5-6. Plaintiff also reiterates his claims as set forth in his amended complaint regarding his confinement to an isolation cell for six days. *Id*. at 7-9.

D.     **Plaintiff's Motions for Partial Summary Judgment**

In his first motion for partial summary judgment, Plaintiff seeks summary judgment in his favor on the claims against Lt. Smith for violation of Plaintiff's constitutional rights in connection with the use of force against him. ECF No. 10 at 1. He supports the motion with a declaration that states in pertinent part that Lt. Smith ordered Officer Barnes to deploy mace against Plaintiff under circumstances that did not justify the use of that force; that he was dragged from the cell to the property room; and that surveillance cameras on either end of the housing unit tier captured the entire incident prior to Plaintiff's placement in the property room. ECF No. 10-1 at 1-3. Plaintiff maintains that the archived camera footage will verify that: Officer Barnes deployed chemical agents three times through the cell door slot and twice more after Plaintiff was removed from the cell; Lt. Smith punched Plaintiff repeatedly in his left rib cage while officers were handcuffing Plaintiff outside of the cell; and Plaintiff did not have mace on his face, head or neck when officers were dragging him off of the tier. *Id*. at 4.

Plaintiff contends that he requested the video surveillance at his adjustment hearing but the hearing officer viewed the footage outside of his presence and noted that "only a portion of the footage was available" and the available footage did not show Plaintiff's exit from cell 4C-21. ECF No. 10-1 at 4. The footage did, however, show Officer Barnes repeatedly deploying mace

through the cell door slot.  *Id*. at 4-5.  Plaintiff states that the hearing officer never explained why he found him guilty of a rule violation in connection with an attempt to attack his cell mate when the available camera footage showed Barnes spraying mace more than once while Lt. Smith claimed Officer Barnes sprayed the mace once in the Notice of Inmate Rule Violation.  *Id*. at 5.

In his second motion for partial summary judgment, Plaintiff asserts that he is entitled to judgment in his favor on the claim that his confinement to an isolation cell for six days violated his constitutional rights.  ECF No. 23.  In his declaration in support, Plaintiff reiterates all of the allegations raised in his amended complaint in connection with the conditions of his confinement.  ECF No. 23-3 at 2-3.  Additionally, he states that despite successfully challenging the practice of confining inmates to a temporary isolation cell through the IGO with an order requiring review of the practices being issued as a result, "prison staff did not comply with the Judge's order."  *Id*. at 5.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" (*Id.*) (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III.  DISCUSSION

**A.  Excessive Force Claim**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

The use of chemical agents may state an Eighth Amendment claim where it is used "in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)) (emphasis omitted).  As this court has observed:

> The use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F.Supp. 813, 818 (D. Md. 1978).  It may be used in order to control recalcitrant inmates.  *Williams*, 77 F.3d at 763.  Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the Defendant acted with a sufficiently culpable state of mind.  *Iko*, 535 F.3d at 238 (4th Cir. 2008) (citations omitted) (holding correctional officer not entitled to qualified immunity where additional chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).
>
> Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent.  *See, e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).  However, where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable.  *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. App'x. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown).  Use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution.  *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

*Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626-27 (D. Md. 2015), *aff'd*, 644 *Fed. Appx*. 243 (4th Cir. 2016).

At issue here are both the initial force used while Plaintiff was inside the cell with Mr. Littlewolf and the force used against Plaintiff after his removal from the cell and later when he claims he was taken to the property room.  Plaintiff disputes that he threatened to assault Mr. Littlewolf while he was in the cell with him and would not allow officers to remove Mr. Littlewolf's restraints.  He claims instead that he picked up the chair inside the cell in an effort to keep the chemical agent sprayed by Officer Barnes from coming into the cell.  However, the officers present during this confrontation could not have known Plaintiff's subjective intent was benign when he refused to obey direct orders and picked up a chair.  Meanwhile Mr. Littlewolf was left to fend for himself with his hands restrained behind his back inside the cell.  Defendants' concern for Mr. Littlewolf's safety was a legitimate reason to utilize force to gain Plaintiff's compliance.  To the extent that Plaintiff's subjective intent did not include a plan to harm Mr. Littlewolf, Plaintiff was the only person present to whom that would have been apparent given the circumstances.  Thus, the use of mace through the cell door has not been shown to be excessive.

The use of force against Plaintiff after he was removed from the cell is far more problematic.  Defendants imply there was no further use of force following Plaintiff's removal from the cell; while Plaintiff alleges that he was beaten once he fell to the floor outside the cell and "continuously maced" and beaten when he was taken to the property room.  Defendants rely on medical records to support their contention that the force used against Plaintiff was not excessive because he was not injured.  ECF No. 19-7 at 9, 11-15 (use of force reports and statements); 23-24 (medical record).  Defendants do not contend that Plaintiff was ever taken into the property room; rather, they assert Plaintiff was taken for medical evaluation, then placed in the holding cell where he remained for six days.

There is a clear dispute of fact between the parties regarding the alleged use of force once Plaintiff was out of the cell. The absence of an injury alone does not refute Plaintiff's claim. *See Wilkins*, 599 U.S. at 37 (noting the core judicial inquiry to be whether force was applied in good faith or sadistically to cause harm). Because the dispute concerns whether the force occurred at all, the disputed fact is material. Determination of such a matter on summary judgment is not appropriate. Neither Defendant Lt. Smith nor Plaintiff are entitled to summary judgment on this aspect of the excessive force claim given the dispute of material fact. Both motions shall therefore be denied as to the use of force allegedly used once Plaintiff was out of the cell and then in the property room.

**B.      Conditions of Confinement**

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind."

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Where an inmate was confined for six days in cells described as "shockingly unsanitary," the Supreme Court has held that the prison officials responsible for the inmate's confinement had fair warning that their specific acts were unconstitutional. *Taylor v. Riojas*, __ U.S. ___, 2020 WL 6385693, *1 (Nov. 2, 2020).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of "a serious or significant physical or emotional injury resulting from the challenged conditions." *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 770).

Plaintiff's claim concerns his confinement to a holding cell for six days. The injuries he describes suffering as a result of his assignment to that holding cell are not objectively verifiable,

15

nor are they serious or significant. Plaintiff has not offered, nor has he forecast, any evidence to support a finding that he suffered an injury as a result of his temporary assignment to the cell. Defendants are entitled to summary judgment on this claim.

## C. First Amendment Claim

To the extent that Plaintiff alleges he was improperly denied access to religious materials during the six days he was confined to the holding cell, his claim fails. Plaintiff's claim that he was denied access to his Bible and therefore could not practice his Christian faith does not suffice to meet his burden of showing that an item is necessary to the practice of his faith. *See Blue v. Jabe*, 996 F. Supp. 499, 502 (E.D. Va. 1996). Further, the temporary nature of Plaintiff's assignment to the holding cell means the deprivation of his Bible was also temporary and related to the legitimate penological objective of securing his compliance with lawful orders to accept a housing assignment. *See Turner v. Safely*, 482 U.S. 78, 89-91 (1987) (prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution).

Plaintiff's claim that he was denied access to the courts fares no better as he has failed to establish an actual injury resulting from the alleged missed deadline. "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a

"nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399. Plaintiff summarily claims that he missed a deadline to appeal the dismissal of an IGO decision to the State Circuit Court. ECF No. 5 at 5-6. There is no way to discern whether the appeal was meritorious. Further, Plaintiff admits he received the IGO decision on November 27, 2020 and does not explain why he could not have appealed the decision prior to his confinement to the holding cell.

D. **Supervisory Defendants**

The claim raised against Defendants Weber, Hill, and Green is based on their roles as supervisors and their responsibilities in that capacity to ensure the use of temporary holding cells at WCI does not violate the constitution or applicable policies. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Having found that the conditions under which Plaintiff was confined for six days do not amount to an Eighth Amendment violation, the claim that Defendants Weber, Hill and Green should be held liable for Plaintiff's placement in those conditions is without merit.

## IV.  CONCLUSION

By separate Order which follows the court will grant in part and deny in part Defendants' motion to dismiss or for summary judgment; deny Plaintiff's pending motions; and dismiss the complaint as to Defendant Showalter.

<u>February 5, 2021</u>                               _____/s/_____
                                                 DEBORAH K. CHASANOW
                                                 United States District Judge