IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND

                                    :
JEFFREY CORPORAL
                                    :
    v.                              :   Civil Action No. DKC 20-1193
                                    :
LIEUTENANT JAMES J. SMITH
                                    :

                           **MEMORANDUM OPINION**

    Presently pending and ready for resolution in this civil rights case is Plaintiff Jeffrey Corporal's Motion for Leave to File Second Amended Complaint. (ECF No. 56). The issues have been briefed and the court now rules, no hearing being deemed necessary. Loc.R. 105.6. For the following reasons, Plaintiff's motion will be granted.

**I.   Background**

    **A. Complaint Allegations**

    On May 11, 2020, Plaintiff, an inmate at the Western Correctional Institution ("WCI") proceeding *pro se* at the time, filed an action pursuant to 42 U.S.C. § 1983 against Defendant Lieutenant James Smith and others, alleging that the defendants violated his constitutional rights by using excessive force against him and depriving him of necessities while confined in isolation. (ECF No. 1). He filed an amended and supplemental complaint that contained additional details regarding the

confinement. (ECF No. 5). Later on, he filed another amended complaint that clarified one fact in his original complaint. (ECF No. 24). The complaint, as amended and supplemented at this point, alleges as follows.

On December 5, 2019, Officer R. Barnes and another officer escorted Plaintiff from the "S.O.H. unit" to a cell in housing unit four that was already occupied by another inmate. Because of his prior employment as a correctional officer in Baltimore City, Plaintiff has previously refused assignments to cells with cellmates. *See Corporal v. Weber*, No. 20-950-DKC (D.Md. Dec. 11, 2020). Officer Barnes put handcuffs on the other inmate through the cell door slot and then opened the cell door, escorted Plaintiff inside, and removed Plaintiff's handcuffs. Plaintiff told Officer Barnes that he wanted to be transferred to a cell without a cellmate and that he would not allow Officer Barnes to remove the handcuffs from the other inmate while he was in the cell with him.

Lieutenant Smith, the housing unit manager, arrived and ordered Plaintiff to cease impeding Officer Barnes's removal of the other inmate's handcuffs. When Plaintiff refused to comply, Lieutenant Smith ordered Officer Barnes to spray Plaintiff with mace through the cell door slot. Plaintiff picked up a chair from the cell and pressed it against the opening in the cell door slot to block the spray, although some of the chemical agent got on his

hands. Lieutenant Smith then ordered the cell door opened, and he and Officer Barnes rushed into the cell. Plaintiff does not remember exactly how it happened, but he remembers next that he was on the floor outside the cell, face down. While Plaintiff was in this position, Lieutenant Smith punched him on the left side of his rib cage and put handcuffs on his wrists.

Plaintiff was then "quickly dragged" to the "housing unit['s] cameraless property room," where he was placed inside a "holding cage." While in there, Lieutenant Smith "punched [him] repeatedly on [his] forehead, [his] left and right face, [his] left and right temple, [his] chest, and [his] left and right thigh." Lieutenant Smith then pulled him by his ankles until he was face down on the floor and "stomped [him] repeatedly on [his] upper and lower back, [his] handcuffed wrists, and [his] hands." Then, Lieutenant Smith and another officer "maced [him] continuously . . . for about fifty seconds" on his head, back, neck, and face while he was still lying face down.

As a result of this use of force, Plaintiff sustained injuries including stress and anxiety; soreness, swelling, and bruising in various parts of his body; and a "ten-hour long, very painful, burning sensation on" the parts of his body that were exposed to mace. Afterwards, Plaintiff received a medical evaluation, which he described as a "sham," and was subsequently placed in a temporary isolation cell for six days.

3

Plaintiff claimed that his constitutional rights were violated by Lieutenant Smith's alleged use of force against him—including when he was in the cell, when he was outside the cell, and when he was in the property room—and by his placement in the isolation cell without sheets or a blanket, slippers or shoes, hygiene items, or eating utensils, and without access to showers, legal documents, medical care, the library, mail, out-of-cell recreation, and religious materials.  In addition to Lieutenant Smith, he asserted claims against Nurse Showalter, the nurse who provided him medical care; Warden Weber, the warden; Commissioner Hill, the Commissioner of Correction; and Secretary Green, the secretary of the Maryland Department of Public Safety and Correctional Services.

**B. Procedural History**

Plaintiff filed two motions for partial summary judgment, each seeking summary judgment for one of his claims—the excessive force claim and the conditions of confinement claim.  (ECF Nos. 10 and 23).  He also filed a motion for default judgment against Nurse Showalter.  (ECF No. 16).  Defendants filed a motion to dismiss for failure to state a claim or, in the alternative, a motion for summary judgment.  (ECF No. 19).  On February 5, 2021, this court issued an order denying Plaintiff's motions for partial summary judgment and default judgment and granting in part and denying in part Defendant's motion to dismiss for failure to state a claim

and for summary judgment. (ECF No. 28). Specifically, this court granted the motion to dismiss as to the conditions of confinement claim as well as to the excessive force claim to the extent it pertained to the use of force while Plaintiff was in that initial cell. (ECF No. 27). This court determined that disputes of material fact existed as to the alleged use of force once Plaintiff was outside the cell and in the property room and therefore denied the motions to dismiss and for summary judgment as to the excessive force claim as it pertained to those alleged events. This court also dismissed Nurse Showalter, Warden Weber, Commissioner Hill, and Secretary Green from the case, reasoning that Plaintiff did not state a claim upon which relief could be granted against Nurse Showalter and only stated claims related to the confinement conditions issue against the others.

On February 19, 2021, the only remaining defendant, Lieutenant Smith filed an answer to the remaining claim, "den[ying] that he abused or assaulted the Plaintiff after he was out of . . . his cell and in custody." (ECF No. 29). Plaintiff had filed a motion for leave to file an amended complaint on December 30, 2020, to "add[] and clarify[] facts raised in his original complaint," specifically that "no cameras were located in" the property room. (ECF No. 24, 24-1). This court granted that motion on February 22, 2021. (ECF No. 30). Plaintiff also filed multiple motions for appointment of counsel, all of which were denied without

5

prejudice. (ECF Nos. 7, 8, 25, 30, 32, 34, 36, 37, 39). On May 21, 2021, Defendant Smith filed a motion for summary judgment, which this court denied on September 2, 2021, noting that there were still material facts in dispute as to what happened once Plaintiff was removed from the cell. (ECF Nos. 47-48). In addition to denying the motion, this court also vacated its prior denial of Plaintiff's motion for appointment of counsel, and counsel was appointed to Plaintiff. (ECF Nos. 48, 50).

Now represented by counsel, Plaintiff has filed a motion for leave to file a second amended complaint.[1] (ECF No. 56). Plaintiff's proposed second amended complaint includes additional defendants and claims. Plaintiff explains that his counsel has conducted "significant research and investigation" and has received a surveillance video that captures part of the incident, and the proposed amendments reflect newly gathered information.

First, Plaintiff seeks to join as defendants officers who served in a supervisory capacity during the incident or during the internal investigation into the incident: Secretary Robert L. Green, Warden Ronald S. Weber, Assistant Warden Bradley Butler, Major Keith Arnold, and Captains Brian Mangus and Marc Whiteside.

---

[1] Plaintiff has already filed at least two motions to file amended complaints (ECF Nos. 5 and 24), but the parties refer to the amended complaint Plaintiff is now proposing as the "Second Amended Complaint." To avoid confusion, this court will do the same.

Second, he seeks to join as defendants other officers who he alleges were involved in the incident, observed it and failed to intervene, or attempted to cover it up, including Officers R. Barnes, D. Trail, Earl Gaumer, M. Drew, and William Logsdon, as well as two John Doe officers. Third, he seeks to add, in addition to maintaining the existing excessive force claim against Defendant Smith (in his individual capacity) in violation of the Eighth Amendment pursuant to section 1983, the following claims:

> 1) a failure to intervene claim against Officers Barnes, Trail, Gaumer, and John Doe One (in their individual capacities) in violation of the Eighth Amendment pursuant to section 1983;
>
> 2) a retaliation claim against Defendant Smith (in his individual capacity) in violation of the First Amendment pursuant to section 1983;
>
> 3) a failure to intervene claim against Officer Logsdon (in his individual capacity) in violation of the Eighth Amendment pursuant to section 1983;
>
> 4) a supervisory liability claim against Warden Weber and Assistant Warden Butler (in their individual and official capacities) in violation of the Eighth Amendment pursuant to section 1983;
>
> 5) a failure to protect from harm claim against Warden Weber and Assistant Warden Butler (in their individual and official

7

capacities) and against Major Arnold and Captains Mangus and Whiteside (in their individual capacities) in violation of the Eighth Amendment pursuant to section 1983;

6) a failure to protect from harm claim against Secretary Green (in his individual and official capacity) in violation of the Eighth Amendment pursuant to section 1983;

7) an excessive force claim against Defendant Smith (in his individual capacity) in violation of Article 25 of the Maryland Constitution;

8) an excessive force claim against Defendant Smith and John Doe Two (in their individual capacities) in violation of Article 25 of the Maryland Constitution;

9) a retaliation claim against Defendant Smith (in his individual capacity) in violation of Article 19 of the Maryland Constitution;

10) a supervisory liability claim against Warden Weber and Assistant Warden Butler (in their individual and official capacities) pursuant to Article 25 of the Maryland Constitution;

11) a failure to protect from cruel and unusual punishment claim against Warden Weber and Assistant Warden Butler (in their individual and official capacities) and Major Arnold and Captains Mangus and Whiteside (in their individual

...

capacities) pursuant to Article 25 of the Maryland Constitution;

12) a failure to protect from cruel and unusual punishment claim against Secretary Green (in his individual and official capacity) pursuant to Article 25 of the Maryland Constitution;

13) an assault claim against Defendant Smith (in his individual capacity) under Maryland state law;

14) a battery claim against Defendant Smith and John Doe Two (in their individual capacities) under Maryland state law; and

15) a civil conspiracy claim against Defendant Smith, Officers Barnes, Trail, Gaumer, Logsdon, Drew, and John Doe Two, and Captain Whiteside (in their individual capacities) pursuant to Maryland state law.

Finally, Plaintiff seeks to add prayers for compensatory and punitive damages against Defendant Smith and each prospective defendant; injunctive relief against Secretary Green, Warden Weber, and Assistant Warden Butler for the claims of supervisory liability and failure to protect in violation of the United States and Maryland Constitutions; and attorneys' fees and costs.[2]

---

[2] Plaintiff requests that the court waive the requirement in Local Rule 103 that an amended complaint be filed with redlining that identifies the differences from the original complaint, see Loc.R. 103.6(c), because of the "substantial differences" of the

## II. Standard of Review

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within a certain amount of time after serving it, and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a). However, it says that "[t]he court should freely give leave when justice so requires." *Id.* "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend the complaint should be granted unless there is a specific reason not to do so, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.*

Rule 20 of the Federal Rules of Civil Procedure allows for joinder of defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the

---

proposed second amended complaint from the previous handwritten versions of Plaintiff's complaint and amended complaint. Plaintiff's request is granted. *See Manley v. Wash. Adventist Hosp.*, No. 18-0053-PWG, 2021 WL 878358, at *1 n.3 (D.Md. Mar. 9, 2021) (approving the parties' consent motion to waive the Local Rule requirement "[b]ecause of the substantial difference between the *pro se* form Complaint initially filed and the Amended Complaint prepared with the assistance of *pro bono* counsel").

10

alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a). "[A]bsolute identity of all events is unnecessary for joinder"; all that is required is that the claims for relief are "reasonably related" in that there is a "logical relationship between them." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021) (internal quotation marks omitted).

### III. Analysis

Defendant Smith "strenuously opposes" Plaintiff's motion. (ECF No. 60, 62). He argues that the proposed amendment "will substantially prejudice him to a speedy and inexpensive resolution of his dispute with the Plaintiff and fails to satisfy the requirements of Rule 20(a) of the Federal Rules of Civil Procedure." He explains that the "[l]itigation has been extremely complex to this point," including litigation over "[m]any sophisticated issues of law and fact," and he laments the additional time and expense that will be required if the parties are now to litigate and conduct discovery on "all of the claims and defenses that would be presented in the expanded litigation," including possible "cross-claims and counterclaims." He adds, without citation, that Plaintiff "fail[s] to show that a single question of law or fact common to all defendants (current and

11

proposed) will arise in the present action" because that would require that "all the current and proposed defendants traced their titles to at least one particular challenged transaction."

Plaintiff points out that Defendant Smith "does not make a *single* argument about the viability of any of the claims that Mr. Corporal seeks to add." (ECF No. 63). Plaintiff also argues that he should have the ability to file an amended complaint because he was acting pro se when he filed his original complaint, joinder would promote administrative efficiency for the court, and none of the reasons Defendant Smith lists (complexity of the claims, hypothetical counterclaims, expense, and additional discovery) are proper reasons to deny a motion for leave to amend. He adds that Defendant Smith would not be prejudiced by the amendment because the state of Maryland is representing him—meaning he is not incurring expenses—and the proposed amendments "merely build[] on facts that are already in the record." Finally, Plaintiff points out that discovery has not yet commenced, and no trial date has been set.

### A. Rule 15

As Fed.R.Civ.P. 15 instructs, this court will grant leave to amend unless there is a compelling reason not to do so. *Foman*, 371 U.S. at 182. The only *Foman* reason Defendant Smith raises is that it will create undue delay that will prejudice him. Defendant Smith does not argue that allowing Plaintiff's amendment will

prejudice his ability to defend himself from the claims against him but rather that it will require more time and resources to reach a resolution of the claims.  Defendant Smith cites several out-of-circuit cases where courts held that a denial of a motion to amend a complaint was proper because the amendment would have caused undue delay that was prejudicial to the defendant.  *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1379-80 (7th Cir. 1990), reh'g denied, 1990 U.S. App. LEXIS 8941 (7th Cir. 1990); *Ross v. Hous. Indep. Sch. Dist.*, 699 F.2d 218, 228-29 (5th Cir. 1983); *Champlain Enters., Inc. v. United States*, 945 F.Supp. 468, 476 (N.D.N.Y. 1996); *Portsmouth Baseball Corp. v. Frick*, 21 F.R.D. 318, 320 (S.D.N.Y. 1958), aff'd, 278 F.2d 395 (2d Cir. 1960); *A. Cherney Disposal Co. v. Chi. & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385-86 (N.D.Ill. 1975).  However, in each of those cases, the amendment was requested at a much later stage of the litigation—after a new trial was granted in one case, *see Fort Howard Paper Co.*, twenty-four years after the original complaint was filed in another, *see Ross*, and after discovery and "on the eve of trial" in the others.

In this case, as Plaintiff notes, the formal discovery process has yet to begin, and no trial date has been set.  The complaint as amended will undoubtedly take longer to resolve than it would have with a single defendant and a single claim, but "[d]elay alone, without prejudice, does not support the denial of a motion

13

for leave to amend." *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987). At this relatively early stage in the litigation, the prejudice to Defendant Smith is minimal. It is not as though the parties must start discovery anew or substantially alter their already-completed preparations for trial. *Cf. Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 118-19 (4th Cir. 2013) ("[A]lthough prejudice can result where a new legal theory is alleged if it would entail additional discovery and evidentiary burdens on the part of the opposing party, this basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." (internal quotation marks omitted)).

Defendant Smith has also not argued that "[t]he proof required to defend against [the] new claim[s] would be of an entirely different character than the proof which [he] had been led to believe would be necessary." *Deasy*, 833 F.2d at 42. Indeed, the new claims all stem from the same set of events alleged in the original complaint. *See Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case."). Defendant Smith has not made a sufficient showing of prejudice from the potential delay.

Defendant Smith mentions other reasons besides delay that the amendment would prejudice him, but he cites no authority that

suggests those are proper considerations for a motion to amend. He argues that the amendment will make the case more complex; while this is undeniably true, he does not explain why added complexity is prejudicial to him, other than that the litigation will require more time and resources than simpler litigation would have required. He also argues that it will be more expensive to defend. However, as Plaintiff points out, Defendant Smith is being represented by the state of Maryland. This court is not insensitive to the fact that the litigation of this amended complaint will be complex and costly, but Defendant Smith has not argued that the amendment itself is what is creating these issues— had Plaintiff included all these claims and defendants in his original complaint, the litigation would have been complex and costly from the outset.

Defendant Smith does not argue that any of the other *Foman* reasons apply. For example, he does not argue that Plaintiff is seeking to amend the complaint in bad faith, that he has already tried and failed to cure deficiencies in the complaint too many times, or that the amendment would be futile. *Foman*, 371 U.S. at 182. Additionally, Plaintiff raises good reasons to allow the amendment. He has been litigating pro se until recently, so his desire to amend his complaint with the assistance of counsel is understandable. The amendment will also promote judicial efficiency in that all of Plaintiff's potential claims against all

15

potential defendants arising out of one set of events can be handled jointly.  For the foregoing reasons, it is appropriate to allow Plaintiff to file a second amended complaint pursuant to Fed.R.Civ.P. 15(a).

### B. Rule 20

Plaintiff's amendment also satisfies the requirements of Fed.R.Civ.P. 20.  Defendant's Smith's arguments to the contrary are unpersuasive.  It is unclear what Defendant Smith means when he suggests, without citation, that Rule 20 requires that "all the current and proposed defendants traced their titles to at least one particular challenged transaction," but Rule 20 requires no such thing.  Rule 20 only requires that "any right to relief is . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and that "any question of law or fact common to all defendants will arise in the action."  This is unquestionably true for each of the defendants Plaintiff seeks to join.  The claims he proposes to bring against them all arise out of one series of events—the use of force against him on December 5, 2019, outside of the cell in unit four and in the property room.  The question of fact common to all defendants is whether or not those events occurred as Plaintiff alleges.  Though there may not be an exact identity of events as to every defendant, that is not required, and there is a clear "logical relationship" between the claims brought against

16

the defendants. *See Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021). Thus, joinder is appropriate.

**IV. Conclusion**

By separate order, Plaintiff's motion for leave to file a second amended complaint will be granted.

 

 

                                                          /s/
                                  DEBORAH K. CHASANOW
                                United States District Judge